IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ERNESTO CASTAÑEDA DAVALOS | § | |
| Plaintiff | § | C. A. No. 4:21-cv-1361 |
| | § | |
| VS. | § | |
| | § | |
| RULE STEEL TANKS, INC., formerly | § | PLAINTIFF DEMANDS |
| d/b/a DIAMOND Z; SCREEN MACHINE | § | TRIAL BY JURY |
| INDUSTRIES LLC; and DZ GRINDERS, | § | |
| LLC d/b/a DIAMOND Z | § | |
| | § | |
| Defendants | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

### INTRODUCTION

Exposed pinch points kill and maim. Each year, approximately 125,000 U.S. workers suffer injuries or death when parts of their bodies are caught between two objects or entangled with machinery in exposed pinch points.[1] For decades engineers and national safety organizations have recommended that manufacturers eliminate or guard this known hazard.[2] Diamond Z chose to ignore these warnings and instead design, manufacture, and distribute a horizontal grinder that cost over three-quarters of a million dollars with a hazardous exposed pinch point that could have been eliminated for less than 1% of its cost. Diamond Z chose to increase its profits, someone else paid the price.

---

[1] www.safetymanualosha.com/caught-or-crushed-injuries.

[2] Health and Safety Executive, *Belt Conveyor Fatal Nip Hazards* (August 7, 2012); https://www.hse.gov.uk/foi/internalops/hid_circs/technical_si1/spc_tech_si1_11.htm#:~:text=unguarded%20nip%20points.-,Definition,Annex%201%2C%20and%20Annex%202, *See*, NATIONAL SAFETY COUNCIL, ACCIDENT PREVENTION MANUAL FOR INDUSTRIAL OPERATIONS 294-95 (8th Ed. 1980).

Ernesto Castañeda[3] was critically injured when his arms became entrapped in Defendants' defectively designed Diamond Z industrial grinder. The injuries include the ripping away of the skin, muscles, ligaments, veins, and arteries of his right arm and the grinding of his right distal humerus, resulting in life-threatening blood loss and full-thickness burns. These injuries have forced Mr. Castañeda to endure over nineteen medical procedures, including neurovascular reconstruction, skin grafts, and three surgical amputations.

The magnitude of Mr. Castañeda's injuries is exceeded only by the horrific circumstances giving rise to them. After his arms became ensnared in Defendants' defectively designed industrial grinder, each revolution of a conveyor belt stripped away the tissue making up Mr. Castañeda's hands and arms while simultaneously inflicting full thickness third-degree burns. Mr. Castañeda's screams of pain and cries for help went unheard in the abandoned field where he was working, as the grinder progressively wrenched more and more of his right arm into its grip. The first responders on the scene found Mr. Castañeda's entrapment so complete, and his blood loss so severe, that they considered a field amputation.

Plaintiff Ernesto Castañeda brings this lawsuit to recover for the damages he has sustained and will continue to sustain due to the Defendants' failure to adhere to basic safety principles.

---

[3] In Spanish tradition, a person typically has three names. The first name is their given name, followed by two surnames. The first surname is their father's first surname, and the second surname is their mother's family name. Mr. Castañeda will be referred to in this pleading by his given name and first surname, Ernesto Castañeda.

## PARTIES

1.      Plaintiff ERNESTO CASTAÑEDA DAVALOS resides in Needville, Fort Bend County, Texas.

2.      Defendant RULE STEEL TANKS, INC. ("Rule"), formerly doing business as DIAMOND Z, is a corporation organized under the laws of the state of Idaho, with its headquarters located at 11299 Bass Lane; Caldwell, Idaho 83605. Defendant does not maintain a registered agent for service of process in Texas. Defendant RULE STEEL TANKS, INC., formerly doing business as DIAMOND Z, may be served with process and a copy of Plaintiff's Original Complaint through its agent for service of process: Steve A. Peel at 11299 Bass Lane; Caldwell, Idaho 83605.

3.      Defendant SCREEN MACHINE INDUSTRIES LLC ("Screen") is a domestic limited liability company organized under the laws of the state of Ohio. Screen's headquarters is located at 10685 Columbus Parkway, Etna, Ohio 43062. Defendant does not maintain a registered agent for service of process in Texas. Defendant SCREEN MACHINE INDUSTRIES, LLC may be served with process and a copy of Plaintiff's Original Complaint through its agent for service of process: Christine A. Murray, Esq. at 330 W. Spring Street, Suite 200; Columbus, Ohio 43215.

4.      Defendant DZ GRINDERS, LLC ("DZ"), currently doing business as DIAMOND Z, is a domestic limited liability company organized under the laws of the state of Ohio. Its current members are all residents of the state of Ohio or a state other than Texas. DZ GRINDERS's headquarters are located at 11299 Bass Lane; Caldwell, Idaho 83605. Defendant DZ GRINDERS, LLC d/b/a DIAMOND Z, may be served with process

and a copy of Plaintiff's Original Complaint through its agent for service of process: Christine A. Murray, Esq. at 330 W. Spring Street, Suite 200; Columbus, Ohio 43215.

## JURISDICTION AND VENUE

5.     This lawsuit is an action between citizens of different states where the amount in controversy exceeds $75,000.00. This Honorable Court has jurisdiction over this claim pursuant to 28 U.S.C. § 1332(a)(1).

6.     This Honorable Court has personal jurisdiction over Defendant RULE STEEL TANKS, INC., formerly doing business as DIAMOND Z. Plaintiff was injured in Texas by a Diamond Z grinder designed, manufactured, and distributed by Defendant. The grinder was initially purchased in Texas by a Texas limited liability company from, on information and belief, a Texas heavy equipment distributor. Plaintiff's employer, a Texas corporation, ultimately purchased the grinder used from a Texas limited liability company. Rule and the distributor actively solicited business in Texas and sold Diamond Z grinders to Texas residents with the expectation that the grinders would be used in Texas by residents of Texas. Those sales were for the financial benefit of Rule. Defendant RULE STEEL TANKS, INC., formerly doing business as DIAMOND Z, has established minimum, purposeful contacts with Texas that are so continuous and systematic as to render it essentially at home in Texas. Defendant RULE STEEL TANKS, INC. has sought benefit, advantage, and profit by availing itself of the Texas market and could reasonably anticipate being called into a Texas court. The exercise of jurisdiction here comports with "traditional notions of fair play and substantial justice," and the exercise of jurisdiction is reasonable under the circumstances.

-4-

7.     This Honorable Court has personal jurisdiction over Defendant SCREEN MACHINE INDUSTRIES LLC, which purchased Diamond Z from Defendant RULE STEEL TANKS, INC. Screen is the successor in interest to DIAMOND Z. Plaintiff was injured in Texas by a Diamond Z grinder initially purchased by a Texas limited liability company, on information and belief, from a Texas heavy equipment distributor. That distributor actively solicited business in Texas on behalf of Diamond Z and sold Diamond Z grinders to Texas residents.  Screen continued the marketing and sales of Diamond Z products in Texas for the express purpose of making profits for Screen and its sister company, DZ GRINDERS LLC. Defendant SCREEN MACHINE INDUSTRIES LLC has established minimum, purposeful contacts with Texas that are so continuous and systematic as to render it essentially at home in Texas. Defendant SCREEN MACHINE INDUSTRIES LLC has sought benefit, advantage, and profit by availing itself of the Texas market and could reasonably anticipate being called into a Texas court. The exercise of jurisdiction here comports with "traditional notions of fair play and substantial justice," and the exercise of jurisdiction is reasonable under the circumstances.

8.     This Honorable Court has personal jurisdiction over Defendant DZ GRINDERS LLC, now doing business as DIAMOND Z. Defendant DZ GRINDERS LLC currently designs, manufactures, and distributes Diamond Z grinders nationally and internationally, including here in Texas. Plaintiff was injured on a Diamond Z grinder initially purchased by a Texas limited liability company, on information and belief, from a Texas heavy equipment distributor, and subsequently purchased in Texas by Plaintiff's employer, a Texas corporation. Defendant DZ GRINDERS LLC actively solicits customers in Texas to whom to sell Diamond Z grinders for DZ GRINDERS LLC's

financial benefit. Defendant, DZ GRINDERS LLC, has established minimum, purposeful contacts with Texas that are so continuous and systematic as to render it essentially at home in Texas. Defendant, DZ GRINDERS LLC, has sought benefit, advantage, and profit by availing itself of the Texas market and could reasonably anticipate being called into a Texas court. The exercise of jurisdiction here comports with "traditional notions of fair play and substantial justice," and the exercise of jurisdiction is reasonable under the circumstances.

9.     Venue is proper pursuant to 28 U.S.C. §1391 (b)(2), as a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Texas and the Southern District of Texas is the location of Plaintiff's principal and permanent residence.

## FACTUAL ALLEGATIONS

### *Horizontal Grinders and the History of Diamond Z*

10.     Industrial grinders are mobile heavy equipment used for everything "[f]rom composting to construction and demolition, land clearing to tire disposal, municipal solid waste to asphalt shingle grinding."[4] Companies operating under the name "Diamond Z" have designed, manufactured, and distributed industrial grinders, on information and belief, since the late 1980s. Horizontal grinders are among the types of industrial grinders "Diamond Z" has manufactured over the years. According to the current Diamond Z website, horizontal grinders are designed to process "stumps, logs, yard waste, tires, solid waste and C&D [construction and demolition] debris into sizes

---

[4] https://www.diamondz.com/#intro

as small as one inch at unparalleled production rates."[5] Diamond Z claims its products'

quality makes it "a trusted grinding expert domestically and abroad."[6]

11.     The original "Diamond Z" manufacturer appears to have been Diamond

Z Trailer, Inc., an Idaho corporation formed in 1988. By 2008 and 2009, Diamond Z

Trailer's main business was the design, manufacture, and distribution of grinders. The

economic crash of 2008 caused Diamond Z Trailer to lose most of its business, and in

May 2009, it laid off its last employees.

12.     In June 2009, Defendant Rule Steel Tanks, Inc. hired many of the laid-

off employees and began designing, manufacturing, and distributing "Diamond Z"

grinders as a part of its business. Rule continued for a decade in the grinder business,

including designing, manufacturing, and distributing the grinder that injured Ernesto

Castañeda. Eventually, in early 2019, Rule sold the Diamond Z grinder business to

Defendant Screen.

13.     In 2019, after Screen purchased "Diamond Z," Defendant DZ Grinders,

LLC, an Ohio limited liability company was formed with Screen as the sole member.

Defendant DZ Grinders, LLC, from its inception, has operated under the assumed

name Diamond Z, continues to advertise in the state of Texas and to sell Diamond Z

grinders in this state. DZ Grinders, LLC was operating under the assumed name

Diamond Z at the time of Plaintiff's injury.

---

[5] https://www.diamondz.com/our-company

[6] *Id.*

**How the Grinder Operates**

14.      The 52.5-ton grinder that mutilated Mr. Castañeda's arm was a 2014 Diamond Z horizontal grinder, Model No. DZH6000TKT-3, VIN 1R9FX6707EC722003 (herein the "Diamond Z grinder"). This grinder was purchased second-hand on December 12, 2014, by Plaintiff's employer, Precision Land Clearing, Inc., a Texas corporation. For the purpose of this pleading, the side of the grinder on which Mr. Castañeda was located when his arm became entrapped will be referred to as the "curbside", as Mr. Castañeda was on the opposite side of the grinder from the side shown below.



15.      The Diamond Z grinder in question has two ends, which will be referred to in this pleading as the "infeed end," the end into which the product to be ground is fed, and the "outfeed end," the end from which the ground product is expelled.



16.    Waste materials, or trees, stumps, and shrubs, are placed on the "infeed" conveyor, a chain conveyor assembly that carries the product to a hammer mill. The hammer mill is a large, round drum that rotates and crushes the product.



17.     After the product is crushed, it falls onto the "Phase I" conveyor belt (pictured below) which runs horizontally underneath the grinder's body and carries the crushed product to the "outfeed" conveyor belt.



18.     The "outfeed" conveyor belt ("Phase II") is elevated and expels the crushed product at a high rate of speed, sending it flying off the end of the machine, as shown in the photograph below.



***The Design Defect***

19.     The horizontal conveyor belt that carries the crushed product from the hammer mill to the outfeed conveyor is approximately 60 inches wide with chevrons rising 1/2" from the hard rubber surface, giving the belt traction and ensuring that the conveyor belt grips and holds the crushed material. The conveyor belt ends are connected by a 30 Bolt Hinge Lacing that continuously revolves with the conveyor belt (shown below).



20.     The horizontal conveyor belt sits on "idler" or "slack" steel rollers as it runs from one end of the machine to the other. These steel rollers turn as the conveyor belt runs across them. The horizontal conveyor belt must be adjusted to ensure sufficient tension and to keep the belt centered and treading down the middle. Four 1 ½"

nut/threaded rod assemblies located on both (opposite) sides and at both ends of the grinder are used to adjust the tension on the horizontal conveyor belt. To increase or decrease the tension on the horizontal belt, one tightens the adjustment nuts accordingly. These adjustment nuts are located underneath the grinder and two are within inches of the fast-moving horizontal belt and one of the steel slack rollers, as shown in the photograph below (curbside adjustment nut nearest the outfeed end of the grinder is shown).



21.     A pinch point is considered a potentially deadly hazard and where the horizontal conveyor belt and the slack roller meet on the grinder is considered a "pinch point". This is where the fast-moving, hard rubber chevroned conveyor belt contacts the rotating steel roller, creating the danger of a worker's fingers, hands, or arms being entrapped. The pinch point on the Diamond Z grinder did not have a guard.

22.     The design used by Diamond Z on the horizontal roller in question was defective because it placed the adjustment nuts in dangerous proximity to unguarded pinch points. This proximity means that a worker performing their job might have fingers, hands, or arms dragged into the pinch point, entrapping the limb between the moving conveyor belt and the rotating slack roller.

23.     Safer alternative designs to those used by Diamond Z have been known for decades. Those alternative designs include, but are not limited to, eliminating the hazard by moving the adjustment nuts away from the unprotected pinch points and guarding the hazard by installing a barrier to protect workers' limbs from being dragged into the pinch point. Both designs were technologically and economically feasible when the product left Diamond Z's control[7] and would have prevented or significantly reduced the risk of Mr. Castañeda being injured.

***May 18, 2020***

24.     On May 18, 2020, Plaintiff ERNESTO CASTAÑEDA DAVALOS was employed by Precision Land Clearing, Inc. as a machine operator. Precision was clearing land at Magnolia Place, a development located near FM 1488 West and 1499 South in Magnolia, Montgomery County, Texas. One of the machines to be used in the project to clear the land was the 2014 Diamond Z horizontal grinder, Model No. DZH6000TKT-3, VIN 1R9FX6707EC722003, which Precision had purchased used. Shortly after 5:00 p.m. on the 18th, following a brief meeting with his supervisor, Mr. Castañeda began preparing the Diamond Z horizontal grinder for the next day's operations. One of his preparatory

---

[7] Especially given that in 2014 the cost of a new grinder of this model exceeded three-quarters of a million dollars.

tasks was to adjust the horizontal conveyor belt to make sure it was centered while running. As a practical matter, this process had to be performed with the grinder's engine in operation and the belt rotating. Mr. Castañeda is right-handed and held a 1 ½" combination wrench in his right hand to tighten the nut that would tighten the belt drive. In the process of tightening the curbside adjustment nut closest to the outfeed end of the grinder, the wrench slipped, and Mr. Castañeda's hand was caught by the belt and jerked into the pinch point between the horizontal conveyor belt and the slack roller located only inches away. The force of the pull was so strong, Ernesto Castañeda's body was jerked into an arc, and he landed on his buttocks, with his legs extended.

25.     After his right hand became entrapped in the unguarded pinch point, Mr. Castañeda attempted to use the wrench with his left hand to free it, but the belt dragged his left hand into the pinch point. Before it was inescapably sucked into the pinch point, Castañeda instinctively jerked his left forearm out while continuing to struggle against the simultaneous stripping and burning of the flesh of his still-entrapped right arm. Mr. Castañeda eventually used his bleeding left hand to retrieve his cell phone from his right shirt pocket. He then struggled with his bleeding left hand to call 911.

### *EMS Assessment/Transport*

26.     The first responders arrived at the scene and found Mr. Castañeda's right hand and arm so entangled in the pinch point that they considered a field amputation. Ultimately, they were able to stop the grinder and cut the conveyor belt, allowing them to extract Mr. Castañeda. One of the first responders on the scene documented Mr. Castañeda's condition as follows:

"Upper Rt Arm Avulsion; Uncontrolled bleeding. Crush injury. Deformity. Pain."

"Lower Left Arm: Abrasion, Contusion, Pain, Swelling."

"ALS Assessment Performed and Warranted."

Mr. Castañeda was transported to the ambulance in the "Semi-fowler" position[8] and rushed to the hospital with lights and sirens.

***Medical Procedures***

27.    During the emergency department triage, Mr. Castañeda's pain was rated at 10 (on a scale of 1-10). He was transferred to the OR Specialty Unit in critical condition[9] and taken to surgery. Surgeons made heroic efforts to save his devastated right hand and arm. The "Immediate Post-Operative Documentation" shows a diagnosis of:

> Massive trauma to right arm and forearm with loss of muscle, tendon, nerve, artery, vein and bone.

Further, the "Findings of the Procedure" are as follows:

> large … upper arm wound with avulsion of brachial artery, vein, nerves, grind / abrasion injury to the distal humerus, burn wounds to surrounding skin. Bisected biceps muscle.

28.    After those first surgical efforts, Ernesto Castañeda remained in the hospital for seventy days, while he endured multiple surgical procedures as surgeons continued their efforts to salvage his hand and arm. These procedures included debridements, exploratory surgeries and the harvesting of flaps from his back and skin grafts from his legs (shown below).

---

[8] This mode of transportation is used to treat life-threatening Hypovolemic shock resulting from the loss of more than 20% of a victim's blood.

[9] Memorial Hermann Emergency Department Report (subheading: Emergency Department Depart).



29.     On June 12, 2020, surgeons amputated Ernesto Castañeda's right hand at the wrist after detecting necrosis. Further necrosis led to a second amputation on July 17, 2020, where Mr. Castañeda lost the remainder of the lower part of his right arm. On April 8, 2021, Mr. Castañeda tragically required yet another amputation. This time his right arm was amputated above the elbow (shown next page). Mr. Castañeda's doctors detected an infection while he was hospitalized following his most recent amputation, for which he is still undergoing treatment. The catastrophic physical injuries Mr. Castañeda sustained on May 18, 2020 will require medical care and continue to impact him for the rest of his life.



In addition to the horrific injuries to his right arm, Ernesto Castañeda also sustained injuries to his left hand and wrist and devastating psychological injuries.

### *Psychological Injuries*

30.     Before his injuries, Ernesto Castañeda was a healthy, independent, and dedicated family man. He enjoyed an active and fulfilling family and social life. As an employee, he was a highly regarded for his reliability, skills, and work ethic. He worked six-day weeks and regularly earned overtime wages.

31.     Since his injuries, Mr. Castañeda is limited in his abilities to engage in the full range of normal activities of daily living. He has been diagnosed as suffering from chronic post-traumatic stress disorder, "Generalized Anxiety Disorder, and Major Depressive Disorder." He remains under the care of multiple physicians and therapists, including a psychotherapist and psychiatrist. His treating psychiatrist currently prescribes a host of medications to help Mr. Castañeda deal with the many issues caused by his injuries, including recurring suicidal ideations, depression, physical pain, phantom limb pain, hypervigilance, flashbacks, recurring nightmares, insomnia, and panic attacks accompanied by fear, racing heart, and shaking legs. His current prescriptions include Trazodone (depression), Clonidine (hypertension), Tramadol (pain), Duloxetine (depression, anxiety, chronic pain), Gabapentin (convulsions, pain). Mr. Castañeda has become withdrawn due to the loss of much of his right arm and the subsequent psychiatric injuries, resulting in a loss of life's enjoyment.  The life-altering injuries Mr. Castañeda sustained on May 18, 2020 will require ongoing psychological care and impact him for the rest of his life.

## CAUSE OF ACTION NUMBER 1- NEGLIGENCE

32.     Plaintiff incorporates by reference the facts set out in the preceding paragraphs in this Complaint. Plaintiff's injuries and damages were proximately caused by the negligence of Defendants and their agents, servants, or employees, all acting in the course and scope of their employment.

**CAUSE OF ACTION NUMBER 2-**
**PRODUCTS LIABILITY DESIGN DEFECT**

33.    Plaintiff incorporates by reference the facts set out in the preceding paragraphs in this Complaint. There were design defects, as that term is defined by the law of the State of Texas, in the 2014 horizontal grinder Model No. DZH6000TKT-3 at the time the grinder left the possession of Defendants. Each design defect was a producing cause of the injuries and damages suffered by Plaintiff.

**CAUSE OF ACTION NUMBER 3-**
**PRODUCTS LIABILITY MARKETING DEFECT**

34.    Plaintiff incorporates by reference the facts set out in the preceding paragraphs of this pleading. There was a marketing defect, as that term is defined by the law of the State of Texas, in the 2014 horizontal grinder Model No. DZH6000TKT-3. Specifically, adequate warnings or instructions, as those terms are defined by law, were not given by Defendants regarding the use of the 2014 horizontal grinder Model No. DZH6000TKT-3 at the time the grinder left the possession of Defendant DIAMOND Z. Each marketing defect was both a producing and proximate cause of the injuries and damages suffered by Plaintiff.

**LIABILITY OF THE SUCCESSOR CORPORATIONS**

35.    Defendant Screen purchased all or substantially all the DIAMOND Z assets from Defendant Rule and then formed Defendant DZ Grinders, LLC and transferred the DIAMOND Z assets to Defendant DZ Grinders, LLC.

36.    Defendant SCREEN MACHINE INDUSTRIES LLC, which purchased DIAMOND Z from Defendant RULE STEEL TANKS, INC., and Defendant DZ

-19-

GRINDERS, LLC doing business as DIAMOND Z, are successor entities that are liable for the conduct in this case of Defendant RULE STEEL TANKS, INC.

## **DAMAGES**

37.     Plaintiff incorporates by reference the facts set out in the preceding paragraphs in this Complaint. The damage done to Mr. Castañeda's right hand, wrist and arm and left hand, wrist and arm, and the psychological injuries and damages he has suffered, are due to the incident described above. There are certain elements of monetary damage, provided by law, that Plaintiff is entitled to have considered separately to determine the sum of money that will fairly and reasonably compensate him for the injuries, damages, and losses he has, and will, incur. From May 18, 2020, until the time of trial of this cause, those elements of damage which should be considered separately and individually for the purpose of determining the sum of money that will fairly and reasonably compensate ERNESTO CASTAÑEDA DAVALOS are:

   a.   The physical pain that he has suffered;

   b.   The mental anguish that he has suffered;

   c.   The amount of reasonable medical expenses necessarily incurred in the treatment of his injuries;

   d.   The loss of earning capacity he has suffered;

   e.   The damages resulting from the physical impairment he has suffered; and

   f.   The damages he has suffered resulting from disfigurement.

ERNESTO CASTAÑEDA DAVALOS would show that in reasonable probability, his injuries and damages will continue into the future. Plaintiff's future losses, from the date of trial and beyond, include:

g.  The physical pain that he will suffer in the future;

h.  The mental anguish that he will suffer in the future;

i.  The reasonable value of the medical expenses that will necessarily be incurred in the treatment of his injuries after trial;

j.  The reduction in his future earning capacity;

k.  The damages resulting from the physical impairment that he will continue to suffer in the future;

l.  The damages he will suffer in the future from disfigurement; and

m.  The damages he will suffer from reduced life expectancy.

38.    Each Defendant's conduct was a legal cause (either producing or proximate) of both the occurrence in question and Plaintiff's injuries and damages. ERNESTO CASTAÑEDA DAVALOS brings this cause of action to recover damages to the extent allowed by law from Defendants. Plaintiff's damages far exceed the minimum amount required for diversity jurisdiction.

## **JURY DEMAND**

39.    Plaintiff demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b).

## **PRAYER**

WHEREFORE, Plaintiff prays that citation be issued and served upon Defendants in the form and manner prescribed by law, requiring that Defendants appear and answer herein; that upon final hearing hereon, Plaintiff have judgment against Defendants for an award of actual damages to compensate him for the damages he has sustained; pre-judgment interest as allowed by law; post-judgment interest; all costs of court; and all other relief to which Plaintiff may be justly entitled.

Respectfully submitted,

LAW OFFICE OF J. MICHAEL SOLAR, PLLC

By: _/s/ J. Michael Solar_____
    J. Michael Solar
    State Bar No. 18824850
    Federal Bar No. 1413
    2 BLVD Place
    1700 Post Oak Boulevard, Suite 600
    Houston, Texas 77056
    (713) 850-1212
    (713) 513-5329/FAX
    jmsolar@solarlaw.com
      and

LAW OFFICE OF RICHARD SCHECHTER, P.C.

By: _/s/ Richard Schechter_____
    Richard Schechter
    Federal Bar No. 1278
    State Bar No. 17735500
    1 Greenway Plaza, Suite 740
    Houston, Texas 77046
    (713) 623-8919
    (713) 622-1680/FAX
    richard@rs-law.com

ATTORNEYS FOR PLAINTIFF
ERNESTO CASTAÑEDA DAVALOS